YAZOO & M. V. R. CO. *v.* GRENADA COUNTY ET AL.

[76 South. 154, Division A.]

1. COUNTIES. *Limitation of taxation. Construction of statutes.*

The limitation provided by chapter 85, Laws 1916, on the amount of taxes that boards of supervisors may levy, does not include taxes levied in order to raise revenue with which to discharge debts incurred by such boards under section 331 and 334, Code 1906, since by the general language there used, the legislature

did not intend to withdraw from such boards the power to pro-
vide for the payment of debts which they had lawfully in-
curred.

2. HIGHWAYS. *Taxes. Validity.*
   A two-mill road tax is valid under section 4469, Code 1906, pro-
   vided the roads of a county are being worked by contract in
   accordance with section 4465 of the Code, and until the con-
   trary appears the court must presume that they were being so
   worked.

APPEAL from the circuit court of Grenada county.
HON. H. H. RODGERS, Judge.

Suit by the Yazoo & Mississippi Valley Railroad Com-
pany against Grenada county and others to recover
taxes paid under protest. From a judgment sustaining
a demurrer to the declaration and ordering money to be
paid to the county, plaintiff appeals.

The declaration in this case was filed by the appellant
for the purpose of recovering certain taxes paid by it,
under protest. The declaration alleges that the board of
supervisors of Grenada county levied taxes for the year
1916 upon property assessed for taxation in said county
as follows: six mills for state purposes, eight mills for
payment of loan warrants and interest due thereon Jan-
uary 1, 1917; four mills for interest and charges and
sinking fund on outstanding bonds of said county; four
mills for general county expenses; two mills for road
purposes; one and one-half mills for school purposes—
making a total levy of twenty-five and one-half mills;
and a further and additional levy of two and one-half
mills was made for interest charges and sinking fund on
consolidated district bonds and one-half mill for school
purposes to be fixed and levied on all taxable property
of the Holcomb consolidated school district of said coun-
ty; making a total in that district of twenty-eight and
one-half mills. It is also alleged that the sheriff and tax
collector of said county demanded payment of taxes on
the property of the appellant at the rate levied as afore-
said, and that appellant paid the taxes under protest to

prevent the sale of its property for taxes. It is alleged also that the board was without authority in law to levy taxes in said county, including the state tax of six mills and excluding the road tax, school tax, courthouse tax, and agricultural high school tax, in excess of sixteen mills on the dollar, and that all taxes levied in excess of said limitation were void and without authority of law, and that there was no courthouse tax and agricultural school tax in said county, and that the levy fixed by the board, exclusive of road tax and county common school tax, exceeded the limitation of sixteen mills on the dollar, as provided by the acts of the legislature of Mississippi (chapter 85, Laws 1916) which provides as follows:

"Be it enacted by the legislature of the state of Mississippi, that the state *ad valorem* tax is hereby fixed at six (6) mills on the dollar for the year 1916, and at six (6) mills on the dollar for the year 1917. The board of supervisors may levy taxes for all purposes (exclusive of road, courthouse, county common school and agricultural high school), which, added to the state tax, will make sixteen (16) mills on the dollar for the year 1916, and sixteen (16) mills on the dollar for the year 1917, and no more."

It is alleged also that the road tax of two mills levied by the board is unlawful, because in excess of the amount authorized by section 4443 of the Code of 1906, which provides that:

"The board of supervisors, in case the labor and commutation for labor provided be found insufficient for the working of roads by contract, may levy an additional tax, the same to be upon all the taxable property in the county, and not to exceed one mill on the dollar in any one year, and to be collected as other taxes."

There was a demurrer to the declaration, in which the county sets up the fact that the additional levy of taxes made by the board was exempted from the provisions of chapter 85 of the Laws of 1916, for the reason:

First, that the additional road tax was levied to meet the needs of the roads of the county, which were worked undr section 4469 of the Code of 1906, which provides for the levy of an "*ad valorem* tax not to exceed three mills on the dollar in any one year;" and, second, because chapter 85 of the Laws of 1916 did not mean to include within its limitations the amount of special levies provided for by sections 331 and 334 of the Code of 1906 for meeting and paying valid outstanding obligations of the county, and if such limitation were intended to apply to the levy of taxes to meet such obligations, then the law would be in conflict with the Constitution of the United States and the state of Mississippi, prohibiting the enactment of laws impairing the obligations of contracts. Sections 331 and 334 provide for the levy of a special annual tax to be used exclusively in paying interest on bonds and providing a sinking fund for their retirement, and for the repayment of any loan warrants and interest thereon which any county may execute for the purpose of obtaining money to defray the expenses of the county. From the judgment of the court sustaining the demurrer and ordering the money paid to the county, this appeal is prosecuted.

*Mayes, Wells, May & Sanders* and *Cowles Horton,* for appellant.

The question raised by the third and fourth grounds for demurrer is, whether the limitations prescribed by Laws 1916, are applicable to and cover taxes leviable under sections 331 and 334 of Code of 1906. The answer to this question seems so clear to our mind that were this an appeal by the appellees, we should content ourselves by merely citing the act involved and the decision hereinafter cited, construing the similar Laws of 1908. If the learned court below has correctly interpreted the act in question, then the proper construction is contrary to its express language and is in square conflict with the previous decisions of this court.

115 Miss.—16

The act involved (Laws 1916, ch. 85, p. 73), after fixing the state tax for the years 1916 and 1917 at six mills on the dollar, provides as follows: "The board of supervisors may levy taxes for all purposes (exclusive of road, courthouse, county common school and agricultural high school tax) which, added to the state tax, will make sixteen mills on the dollar for the year 1917, and no more."

Our contention is that this act means exactly what it says, and that the board could levy, excluding the specially exempted taxes, only sixteen mills on the dollar "for all purposes"—"and no more." That all taxes levied in excess of these restrictions are illegal, and that the excessive levy was unwarranted and without authority in law. This interpretation is, indeed, the plain and express language of the act. The words employed are clear, unambiguous, and positive. In such case, we invoke the familiar rule, first in the construction of all written instruments, that the language should control. *Hawkins* v. *Carroll Co.,* 50 Miss. 759; *Peeler* v. *Peeler,* 68 Miss. 147; *Wells* v. *McNeil,* 93 Miss. 407.

It is far too late to question the soundness of *Wells* v. *McNeil.* Whether the construction of Laws 1908 was sound or unsound and it is clearly the former that construction has been too repeatedly adopted by the legislature to depart from it at this time. Can there be any question, therefore, as to what is included and what is excepted from the limitation of the laws involved? Can the courts, by construction or otherwise, add another exception to the ones fixed by the legislature in exempting certain special taxes from its limitation? The rule *expressio unius est, exclusio alterius* applies with peculiar force in view of this legislative action. *Koch* v. *Bridgers,* 45 Miss. 261. See 90 Am. St. Rep. 447; 7 Idem. 555; 10 L. R. A. (N. S.) p. 135; *Dailey* v. *Swope,* 47 Miss. 379; Cooley, Taxation, p. 324; *Moore* v. *Foote,* 32 Miss. 479; *Beard* v. *Lee County,* 51 Miss. 547; *Foote*

v. *Brown,* 60 Miss. 161; *Monroe County* v. *Strong,* 78 Miss. 571:

An examination of the history of these sections 331 and 334, confirms the view we have taken.   Under Code 1871 (Sec. 1382) as construed by this court, the board had the right to make its contracts and allowances upon the basis of credit prices.   This rule was changed in 1892, by the adoption of a statute requiring that these things be handled on a cash basis (Sec. 322, Code 1892). This brought about a "radical change" in the state's policy in this regard (78 Miss., p. 574) and of course, this subject received the attention which the change required.   At the same time and because of this change, the legislature enacted these sections, then sections 311 and 313, Code 1892.   The one was enacted in order that money might be raised by the issuance of long time bonds; the other to secure the money by a short loan; payable on the first day of the next succeeding January and out of the first moneys collected as taxes during that year.   The object of these statutes—the very purpose of the change was to decrease, not to increase, the expenses of the county and the burdens of the taxpayer.   Laws 1892 providing the tax levy for that year and the next, limited the board to the levy of taxes at twelve and one-half mills on the dollar "for all purposes" including, of course these newly created purposes providing for an additional levy of five mills for counties having outstanding indebtedness.   That legislature, therefore changed the old system of county finances, created new authority for the board in order to provide the ready funds and continued, as had been previously done, to provide its limitation as to taxes, "for all purposes." Authority to tax under these new sections (331 and 334 of the present code) created a new "purpose" for which the levy might be made, but, at the same time, the board was still required to keep within the limitations fixed by the biennial revenue laws.

Save for an immaterial change in section 311 (Code 1892) in 1900, these sections of Code 1892 remained untouched from that time until 1904. During that period, the legislature was using the same language in fixing the annual limitations as is found in the act involved. In 1904, both of these sections were amended. Laws 1904, pages 189 and 195. The legislature was again dealing with these sections and the taxing limitations at the same time and by Laws 1904, page 87 again fixed the limitation at sixteen mills on the dollar, "for all purposes"—"and no more." Again, it provided for an additional two-mill levy for school purposes. These three acts were approved the same day. March 22, 1904.

In 1906, the code of that year was adopted and the legislature again considered these sections and the taxing limitations together. Laws 1906, page 75, fixed the limitations at that time, using the same comprehensive language. Were these special taxes exempted from these various limitations?

Laws 1908 were the next acts upon the matter and in the case of *Wells* v. *McNeill,* these laws were interpreted to include all taxes. Laws 1910, page 72; Laws 1912, page 65; Laws 1914, page 87, and Laws 1916, page 73, using the same language as used in 1908 and the former acts, were enacted in the light of the construction placed upon that language by the case cited. In each of these last acts, the legislature had excepted from their restrictions certain special, designated taxes, so as to exempt them from their limitations. Everything else is included; every tax, regardless of purpose and of how levied, fall within their terms, and the court can no more exempt one tax than it can another.

In 1910 (Laws, p. 192) and 1912 (Laws, p. 306), sec. 331, of the Code of 1906, was again amended. Neither in the amendments nor the revenue laws, fixing the limitations then, do we find any legislative intent that this tax shall be exempted. On the other hand, since these

sections were first enacted, every legislative action has
been to manifest a clear intent that taxes levied under
them are not to be excluded from the tax rate limita-
tions.

Sec. 307, Code 1906, just as its predecessor in the Code
of 1892 had done, provides that the board's levy shall be·
of taxes within the limitations · prescribed by law."
Unless these limitations are to be found, in the biennial
acts fixing the rates, they do not exist at all. *People v.
May,* 9 Colo. 454, 12 Pac. 838.

The learned court below went off upon a misapplica-
tion of the case of *Beck* v. *Allen,* 58 Miss. 155, and *Peter-
son* v. *Kittredge,* 65 Miss. 35. The court construed those
cases to hold that taxes, leviable under sections 331 and
334, were exempted from the limitations of the Laws
of 1916. That construction was erroneous and it was
also error to apply the doctrine of those cases in refer-
ence to the local acts there involved to the sections of the
code here in question. Because the court in those cases
upheld the special taxes levied under local· laws in addi-
tion to taxes levied under the general statutes, the
learned court below upheld the taxes here levied under
sections 331 and 334. The error of this action becomes
apparent upon an examination of these cases.

In the other case (65 Miss. 35) a like situation pre-
vailed. The local Act of 1872 (p. 188) authorized Leflore
county to issue bonds to Carroll county and levy a spec-
ial tax therefor. The general law of 1875 (p. 52) fixed
the general county limitation at twenty dollars on the
thousand. It was held, following *Beck v. Allen,* that the
general act did not repeal or take away any of the rights
given by the former local law and the tax levied there-
under, was upheld. In this case, likewise, the local act
had been executed and the bonds issued thereunder.

Those cases differ from the case at bar in two particu-
lars, which particulars form the very basis of the court's
rulings, namely: (1) The court was considering special
local laws which remained unrepealed and unaffected

by the later general act. (2) The obligations provided
for in those local laws had been executed and third par-
ties had secured under them vested rights before the
general Act of 1880 in the one case and of 1875 in the
other were enacted. Neither of these conditions are true
of the case at bar.

The rule of harmonizing local and general laws (ap-
plied in the cases just cited) is a familiar one and no
better illustration of its application will be found than in
*Jones v. Melchoir*, 71 Miss. 117.

If our contention of Laws 1916 is wrong, then the
court was in error in *Wells v. McNeil*, in interpreting the
language upon which appellant relies. The legislature
has, likewise been guilty of the veriest folly in excepting
from the operation of the various tax rate laws the spec-
ial taxes therein exempted. The road, courthouse, school
and agricultural high school taxes, exempted from the
operation of Laws 1916, are all special taxes, leviable
under particular statutory authority. The statutes con-
ferring the right to levy them take equal rank with sec-
tions 331 and 334 and taxes under the former, stand
with equal dignity as do taxes under the latter. If no
exceptions are necessary to save the latter tax, then none
would be required to save the former, and thus we find
the legislature persistently doing the useless thing of
making any exceptions.

The board of supervisors is a tribunal of strictly
delegated authority and nowhere is found a closer ob-
servance of its limitations than in the levying of taxes.
By various statutes the board is given the right to do
various and sundry things, to do those things, they are
authorized to tax the people. At the same time, and, for
the very purpose of preventing excessive burdens, the
board is limited, not only to a strict observance of the
various statutes conferring jurisdiction, but also by the
requirements that the county taxes shall never exceed
the limits fixed by these taxing laws. This, after all, is
of equal importance to the people, and closer in its effects

to the average citizen. If we, therefore, brush aside the language of the act, disregard or misconstrue the plain meaning of its terms, and permit the levying of another tax than the ones allowed by the limitations of the law, we defeat the very object of the restriction. This is bound to be true, because the reason for the exemption in the one case would be the same as in all others, to wit: statutory authority to levy the tax, and there would, therefore, be no limitation, save that the county "ordinary tax" could not exceed, in this instance, ten mills on the dollar. All the rest leviable as will be seen under other statutes, would be freed from the restrictions.

The road tax levied under section 4443 of the Code, was fixed at two mills and is, therefore, excessive by one mill. The section cited applicable generally, fixes the limitation at one mill, and there is nothing in these proceedings whereby it appears that this statute does not control. The demurrer, going to the whole declaration, should have been overruled for this reason, if we are wrong in reference to the six mill excess.

*W. M. Mitchell,* for appellee.

The contention of counsel for appellant, in brief in this: That, although the legislature says to the board by sections 331 and 334 of the Code of 1906 that you may issue bonds of the county to an amount not to exceed five per cent of the assessed value of the property, and loan warrants up to fifty thousand dollars, for certain purposes, therein specified, provided, you first obtain the consent of the people, and provided, further, that you make special levies to take care of and redeem these obligations at maturity, and although the board in good faith have acted upon the authority granted them under these statutes and complied with all the conditions thereof to legalize their acts, yet the legislature can come along afterwards and say to the board that we authorized you to issue these obligations and sell them to

innocent purchasers and take their money and use it for the public benefit, and the people of the county also authorized you to do this, yet you cannot levy more than ten mills to pay this special tax levy which we required you to make, and also to pay all general current expenses of the county for the year 1916, thus virtually nullifying these sections without any pretense of or attempt at repealing them. And counsel base their argument to sustain this contention, and practically stake their case upon the decision of the court in the case of *Wells* v. *McNeil,* 93 Miss. 407.

Let us therefore, at the beginning of this argument, consider the facts upon which the decision in that case was based and see if it sustains appellant's contentions. Briefly stated, the facts in that case were as follows: That board of supervisors of Newton county desired to erect a new court house. To do this they first submitted the question of a bond issue for that purpose to the people of the county under section 331, Code of 1906, but this proposal was rejected by the people. Thereupon the board attempted to proceed under sections 313 and 324, which authorized the board to make a special levy for this purpose, but did not provide for submitting the question to the people.

The board advertised for a building to cost from thirty thousand dollars to fifty thousand dollars, and made a special levy of four and one-half mills to apply to the payment of same. This levy was insufficient by at least ten thousand dollars to pay the cost of this building, and any greater levy would have brought the total levy for that year above the limit fixed by the Act of 1908. Upon this state of facts it was held, and properly so, that this proceeding was illegal because the board not only had not been authorized to exceed the limitation of the act, but had been expressly prohibited from so doing by their adverse vote. In other words the board cannot incur an indebtedness which would require them to exceed the general limit of taxation, without

being specially authorized to do so by the people who have to bear the burden of the extra taxes thereby incurred. To quote, the exact language of the learned special judge in that case: ''The only way in which a burden of future taxation can be laid on the people is the right to express their will by an election. If the board could pay the entire debt by a special levy under section 324 without exceeding the limits of the general statute then they could legally proceed under sections 313 and 324, but if not they must resort to section 331, and let the people say whether or not they are willing to bear the additional burden of taxation.''

This decision simply followed and reaffirmed the decision in the case of *Monroe County* v. *Strong,* 78 Miss. 565, where the questions as to the powers of the boards of supervisors is very fully and extensively discussed, and legislation, both constitutional and statutory, relating to their powers of taxation gone into. But neither the case of *Wells* v. *McNeil* nor that of *Monroe County* v. *Strong,* are in conflict with or attempt to overrule the case of *Beck* v. *Allen,* 58 Miss. 143, and *Peterson* v. *Kittredge,* 65 Miss. 40, 3 So. 65, which latter case cites and reaffirms *Beck* v. *Allen.* On the contrary *Beck* v. *Allen, supra,* was expressly referred to and approved in *Monroe County* v. *Strong,* and we submit that the law as announced in *Beck* v. *Allen* and *Peterson* v. *Kittredge,* is the law today and has been always the law in Mississippi. See ——— v. *Klein,* 51 Miss. 807; *Gamble* v. *Witty,* 55 Miss. 26. The rule laid down in these cases is that where there are valid outstanding obligations of the county it is not only the right, but the duty of the board to provide for their payment, and if they fail or refuse to levy a tax sufficient for this purpose the holders of the obligations can force them to do so.

Counsel for appellants, realizing that the cases of *Beck* v. *Allen,* and *Peterson* v. *Kittredge, supra,* are squarely against their contentions and virtually put them out of court, make a very strenuous effort to break

their force and effect by arguing that these decisions were dealing with local acts and therefore have no application to sections 331 and 334, Code 1906.

A brief consideration of these acts and a comparison of them with the sections of the Code just quoted will convince the court that there is no merit in this position of counsel, but that, if there is any difference in the binding force as between them it would be in favor of the Code sections, because these sections were passed in 1892 in order to comply with sections 87 and 88, Constitution of 1890, requiring the legislature to provide by general laws for protecting and taking care of local interests, instead of passing local laws as had been the custom theretofore, and for the further and very potent reason that these sections require the boards to go to the people before issuing bonds and other obligations of the county for which special and extraordinary levies of taxes must be made, while the foregoing local acts did not require this. Let us, then, examine the facts upon which these cases were decided. The acts of 1871, p. 657, authorized Warren and other counties named, to issue bonds to refund past indebtedness and to defray current expenses; the Act of 1873 provided for levying of school district taxes; and the Act of 1878 authorized Warren and other counties named to issue bonds to compromise and take up bonds held by a railroad company and which were then in suit, etc., both Acts of 1871 and 1878 provided that the boards of supervisors should levy annually special taxes to pay interest and create a sinking fund for the redemption of said bonds. Under the authority of these acts the board of supervisors of Warren county issued the bonds therein provided for and levied special taxes to provide for them, which together with the levy for the ordinary expenses of the current year ran the levy up to twenty-five mills, for the year 1880, while the General Revenue Act of 1880 fixed the limits at twelve and one-half mills, but provided that, counties having outstanding indebtedness might levy up

to fifteen mills, "for all purposes, and no more," using the identical language used by the Act of 1916. Beck enjoined the tax collector of Warren county on the ground that this levy was excessive and illegal, as to the excess over fifteen mills under said Act of 1880, on the grounds, first, that the Act of 1880 expressly repealed these local acts, and second, that Act of 1880 limited the board to fifteen mills "for all purposes, and no more," and that the board must provide for these bonds within that limit— exactly the same contention as made by appellant in this case. The court will note that complainant there made out a stronger case than the one at bar for the reason that the Act of 1880 did actually attempt to repeal "any and all laws or parts of laws in conflict with this act" while the Act of 1916 did not even profess to repeal sections 331 and 334, Code 1906 under which the bonds and loan warrants in this case were issued and which expressly required the board to levy special taxes to take care of them. Thus it will be seen that the same points were made there as here, viz: complainant contended that the statute meant exactly what it said, and the board was limited to amount fixed therein, and no more, and the board must keep within these limits regardless of what obligations the county had outstanding, while on the other hand, defendant insisted that these special acts authorized the board to exceed the limits fixed by the general statute, where it was necessary to do so in order to meet the valid and binding obligations of the county; otherwise, the act so limiting the board would be void because violating the obligations of contracts, etc.

In response to these contentions Judge GEORGE, who, as my friend Mr. Horton very justly stated, was a "strict constructionist" and contended that the legislature had the right to limit the taxes which boards of supervisors could levy, even under the Constitution of 1869, speaking for the majority of the court, held: "The position that the special levies under the local Acts of

1871 and 1878 which authorized the board of supervisors to issue bonds and required them to make a levy of a special tax to meet them are restricted by the Act of 1880, is untenable. The local acts on their face confer a power to levy the special tax in addition to and outside of the levies limited by law. Acts of that character are not presumed to be within the general words of repeal in a general statute. Besides, these special acts to be issued, and the collection of them by the county was a part of the obligation of the contract contained in the bonds.''

Certainly the obligations created under local acts which did not provide for the submission of the question of their issuance to the taxpayers of the county are vested with no greater solemnity nor require of the boards creating them the exercise of any higher power or authority in taking care of them, than those created under general laws which the Constitution of 1890 required the legislature to pass to provide for the people interested before levying this special and extraordinary tax, who, in the language of this court ''are the legitimate source of all authority'' and with whose will, properly and legally expressed, this court will not attempt to interfere, since the courts have nothing to do with the wisdom or necessity of the laws, which is purely a legislative question. *Rosenstock* v. *Board of Supervisors, etc.,* 72 So. 876; *State* v. *Wheatley,* 74 So. 427.

Summing up our argument: Our position and contention is that while it is a well settled rule that the taxing power is vested in the legislature and that the only power which boards of supervisors have to levy taxes is derived from and conferred upon them by the legislature, yet we say that this power can be conferred with or without limitattions, just as the legislature sees proper, and further that the Constitution and the legislature can confer other powers upon the boards, and these powers may be such as to impliedly carry with them the power to tax, and that when such other powers

thus conferred have been exercised by the board and they have contracted liabilities thereunder, then the authority is necessarily implied to discharge these liabilities in the manner required by the act conferring the right to create them. *Murch* v. *Warren County,* 73 Miss. 356; *Cox* v. *Wallace,* 100 Miss. 541. And that the legislature cannot by a general law deprive the holders of these liabilities of their rights in the premises; and it is upon these sound principles of law that the decisions in *Beck* v. *Allen* and *Peterson* v. *Kottredge, supra,* were based; and it is upon these, that counsel for appellees stakes his case and confidently looks for an affirmance of this case by this court, since any other holding would, we respectfully submit, amount to holding that the legislature could pass laws which would result in the violations of contracts and hence violate the state and federal Constitutions.

SMITH, C. J., delivered the opinion of the court.

1. We are of the opinion that the limitation provided by chapter 85, Laws of 1916, on the amount of taxes that boards of supervisors may levy does not include taxes levied in order to raise revenue with which to discharge debts incurred by such boards under sections 331 and 334, Code of 1906; for it is hardly possible that by the general language there used the legislature intended to withdraw from such boards the power to provide for the payment of debts which they had lawfully incurred.

2. The two-mills road tax is valid, under section 4469 of the Code, provided the roads of Grenada county were being worked by contract in accordance with section 4465 of the Code; and until the contrary appears, we must presume that they were being so worked.

*Affirmed.*