TOWN OF CRENSHAW v. JACKSON et al.

[84 South. 912, In Banc. No. 20950.]

1. MANDAMUS. *County board of supervisors may be compelled to pay judgment from its general fund or to levy a tax.*

Where a judgment was rendered against a county, the board of supervisors may be compelled by mandamus to pay it, if the county has money in its general fund, and if it has no such general fund it may be compelled to levy a tax on the property sufficient to pay the same.

2. COUNTIES. *County empowered to issue bonds to pay obligations outstanding at passage of statute authorizing issue for that purpose.*

Where a county had outstanding obligations at the time of the passage of chapter 209, Laws 1918, and has no money in its treasury to pay such outstanding obligations, it has power and it is its duty to issue bonds to pay such obligations.

APPEAL fom circuit court of Panola county.

HON. E. D. DINKINS, Judge.

Suit for mandamus by the Town of Crenshaw against C. P. Jackson and others, members of Board of

Supervisors of Panola County. Suit dismissed, and the plaintiff appeals. Reversed, and judgment rendered for plaintiff.

*F. H. Montgomery,* for appellant.

When a judgment is rendered against a county it is the duty of the commissioners to apply such funds in the treasury of the county as are not otherwise appropriated to its payment, or, if there are no funds and they possess the requisite power, it is their duty to levy a tax for that purpose." *Town of Crenshaw* v. *Panola County,* 115 Miss. 905.; Section 311, Code 1906, (sec. 3684, Hemingway's Code), provides that a creditor must present his claim to the board of supervisors for allowance. If the board fails to allow it, he may appeal or he may file a suit. In either case, if a judgment be rendered against the county, "the board of supervisors shall allow the same, and a warrant shall be issued therefor." Certainly if this section means anything, it means that all judgment debts must be paid. If there are no funds at hand, funds must be raised by taxation to pay the same.

The petition for writ of mandamus in this case was drawn in the alternative; that the board be required to issue a warrant if any funds are available, and if not, levy a tax and raise funds to pay off the debt. This would require a tax levy in Panola county of one-forty-fifth of one per cent. The county has said that it not only hasn't the money, but hasn't any way to get it.

Section 307, Code of 1906 (sec. 3680, Hemingway's Code) says: "The board of supervisors within their respective counties shall have power . . . to levy such taxes as may be necessary to meet the demands of their respective counties, upon such persons and property as are subject to state taxes for the time being, not exceeding the limits prescribed by law."

I have always understood that a debt which had acquired the dignity of a valid judgment, was not only a demand, but a most pressing demand. I do not believe counsel for appellee will argue that under this statute, the board of supervisors, is without authority to levy a tax to pay this judgment.

Counsel complains that we did not show by proof in the case as to how the county of Panola was working its roads since 1906 and 1907. We said nothing in our pleadings about that, and any such evidence would have been irrelevant. If this proof was material, the burden is upon the appellee, as the case was tried entirely upon a plea of confession and avoidance. I do not consider any of that argument of counsel relevant to the issue.

There was no sufficient proof in the case that at the time of the trial of this case the county was without funds to pay this judgment. If it was without funds, sections 307, Code of 1906 (section 3680, Hemingway's Code), and section 311, Code of 1906 (sec. 3684, Hemingway's Code), are direct legislative authority for levying a tax to pay this particular judgment.

The decree or judgment of the lower court should be reversed; and a writ of mandamus ordered issued by this court, directing the payment of this judgment; or levy a tax upon the taxable property of Panola county sufficient to pay the judgment, and when collected to issue a warrant in payment therefor.

Municipal integrity is not less sacred than personal integrity. The laws of this state have never been construed by this court in a manner to defeat the payment of honest debts.

*John W. Kyle,* for appellee.

The judgment of the lower court in denying the writ and dismissing the petition was based mainly upon the opinion rendered by this court in the case of *Town of*

*Crenshaw* v. *Panola County,* 115 Miss. 891, 76 So. 741, and the authority of that decision remains now as the insuperable obstacle in the way of appellant obtaining relief which it seeks in this appeal. We shall now proceed to an analysis of the decision rendered in that case, which is in fact the same case as the one we now have before us.

This court in that case expressly approved the decision of the Florida court in *Pippin* v. *Town of Blountstown,* 74 So. 663, which was a proceeding in mandamus. On page 904, 115th volume Mississippi Reports, this court, through Justice Cook said, in speaking of that case: "In the *Florida case, supra,* the county manifestly could not pay over the money received by it, because it had been expended. It would of course be a vain thing to order the county to pay over to the town certain money which it did not possess."

The idea insisted on by counsel for appellant that the rendering of a judgment against the county necessarily carries with it the means of enforcing payment is expressly negatived in the opinion rendered by Justice Cook. The language of the court on this proposition is as follows: "The case cited (i. e. *Holly Springs* v. *Marshall County,* 104 Miss. 752, 61 So. 703), was not a mandamus proceeding to require the county to pay, and neither is this a suit to require payment; it is merely a suit to establish liability. When it comes to collection, an entirely new question will be presented. The question will then be: will the court issue its mandate commanding payment of the judgment?"

Justice Cook cited with approval the following statement of the law as given in Ruling Case Laws, Vol. 7, p. 967: "The mere authorization of a suit against a county does not imply necessarily a means of enforcement of a judgment therein obtained. When a judgment is rendered against a county it is the duty of the commissioners to apply such funds in the treasury of the

county as are not otherwise appropriated to its payment, or if there are no funds, and they possess 'the requisite power, it is their duty to levy a tax for that purpose; but if they have no funds, and the power to levy the tax has not been delegated to them, such tax cannot be levied without express legislative authority.''

Of course that statement of the law was perfectly sound before it was adopted by this court. It is undoubtedly the law in Mississippi now; and the rule thus laid down renders wholly untenable the argument of counsel for appellant, contained in the very able brief counsel makes use of the following language: ''Wouldn't it be a monstrous proposition, that a person could have a valid and subsisting judgment approved by the supreme court of the state against the county of Panola, for less than two hundred dollars, which it could not legally collect?''

Yet this court has said in the case cited above, which is in reality the very case we are now trying, that just such a condition may exist. ''The mere authorization of a suit against a county does not imply necessarily, a means of enforcement of a judgment therein obtained.''

The facts of the present case brings it wholly within the rule laid down in the above quotation. ''When a judgment is rendered against a county, it is the duty of the commissioners to apply such funds in the treasury of the county as are not otherwise appropriated to its payment.'' The words, ''such funds in the treasury of the county as are not otherwise appropriated,'' clearly mean such funds on hand as are not devoted by law to the payment of other classes of indebtedness.

Whatever the law in other states, it is plain that in Mississippi every dollar of county taxation collected by authority of the board of supervisors is collected for specific purposes; and this rule applies as well to the so-called ''general fund'' of the county as to other special

funds. In order that this principle might be kept constantly before the boards of supervisors in spending county money, as I have remarked above, it is expressly required of them that "the order allowing such claim shall be entered on the minutes, specifying the name of claimant, the amount allowed, the page and particular section of the law under which such allowance is made, and on what account." The purpose for which the general fund of the county is raised and the character of claims in payment of which it is to be expended are no less specific, though more numerous than the purposes for which the other county funds are to be expended. To use general fund money to replace other funds wrongfully misappropriated only aggravates an admittedly bad situation, and results in an unauthorized juggling of county funds, which this court would not permit for a moment.

There being no funds in the county treasury "not otherwise appropriated" that is, not devoted by law to the payment of other classes of indebtedness, it is manifestly impossible for the board to pay the judgment claim herein sought to be enforced. That claim was a legitimate charge against one specific fund only, which has long since been expended, whether rightfully or wrongfully, it matters not. The predicament in which the town of Crenshaw now finds itself in trying to realize something on that claim may appeal to the sympathy of the court, but it cannot have the effect of making the claim payable out of a fund out of which it was not payable originally.

The court further said in the quotation from Ruling Case Laws, cited above: "If there are no funds (not otherwise appropriated) and they possess the requisite power, it is their duty to levy a tax for that purpose; but if they have no funds and the power to levy the tax has not been delegated to them, such tax cannot be levied without express legislative authority."

That is the situation we have here.  There are no funds out of which the judgment claim can be paid and there is no authority vested in the board, of supervisors to make a special levy to create a special fund for the payment of that claim, as we have before pointed out. Section 4443 of the Code of 1906, authorized the levy of only one mill for road purposes.  There is nothing in the record to show that the board of supervisors ever adopted section 4465-4475, for the working of the public roads in this county, and those sections are expressly rendered inoperative in any county, until the board of supervisors, by proper orders entered upon their minutes, put them into effect in that county.  The board for the years 1907 and 1908 upon the showing made on the record, exhausted its taxing power for road purposes for those years.  But even had this not been true, the statute upon which appellant's claim is based does no more than direct that one-half of that part of the tax levied under that statute and collected within the corporate limits of the town of Crenshaw be paid over to the municipality for road work therein.  If that one-half was never turned over to the municipal authorities by the board of supervisors, as required by law, and the judgment which appellant has obtained and now seeks to collect, is conclusive that it never was, but was wrongfully misappropriated by the old board of supervisors for some other purpose, appellant's remedy ought to be against the members of the old board who were guilty of the misappropriation. Furthermore if the board of supervisors had not exhausted its power to levy taxes under section 4443, Code of 1906—as unquestionably it had, or if they were authorized to make a further levy under sections 4465-4475,—as they were not and if a further levy were made under either of those sections, it would not be within the power of the board to turn over to the town of Crenshaw any part of the special road fund collected as the result of such levy, except one-half of the amount of that special

tax collected on property situated within the corporate limits of the town of Crenshaw. All the rest of the funds collected under such levy would have to be expended for road work in that part of the county lying outside the corporate limits of municipalities claiming their half under the statute. In other words the funds arising out of such a levy would have to be expended in the manner and for the purpose prescribed. (See *Pipin* v. *Town of Blountstown,* 74 So. 653, 655, *supra*).

As stated by the court, no special tax levy can be made without legislative authority, and no such authority has been granted as will authorize a special levy to pay the claim sought to be collected in this proceeding. In addition to the decision of our own court which we have just reviewed, and in addition to the cases in point decided by the Florida supreme court under statutes similar to our own, also heretofore cited. I wish to call the attention of the court to the rule as stated in 26 Cyc., page 319, which is as follows: "Mandamus will not issue to compel the payment of a claim against a municipality where no appropriation has been made for such payment, or where there are no funds on hand applicable to the payment of the claim, and funds for one purpose will not be compelled to be devoted to another."

In the case of *Goldsmith* v. *San Francisco,* 115 Cal. 36, 46 Pac. 816, it was held that where the general fund for the fiscal year in which supplies were furnished by contract with the city and county of San Francisco to prisoners in the jail of the municipality was totally exhausted, the reduction of the original claim therefor to a judgment against the city and county did not increase the dignity of the claim so as to authorize the claimant to demand payment of it from any fund not subject to the primary demand, and mandamus would not lie to compel the supervisors to order such judgment paid.

The case of *Universalist Church* v. *Trustees, etc.,* 27 Am. Dec. 267, is a case involving the same principles as

the one now before the court. That case was a mandamus proceeding to compel the trustees of religious funds to pay to the relators their proportion of the rents and profits of the trust properties for the years 1833-1843. The trustees answered that all of the trust funds for those years had been distributed to those applying and that no part of the said funds remained in their hands. The court held that the return (answer) was sufficient.

I respectfully ask that the judgment of the lower court, denying the writ and dismissing the petition, be affirmed.

Etheridge, J., delivered the opinion of the court.

The town of Crenshaw recovered a judgment against Panola county, as shown by the report of the case in 115 Miss. 891, 76 So. 741, under an agreed statement of facts therein set forth in full. Afterwards the certified copy of the judgment was presented to the board of supervisors and the board refused to pay the same, when this suit was instituted against C. P. Jackson et al., members of the board of supervisors of the county, for mandamus to either compel the board to issue a warrant to pay same or to levy a special tax so as to provide a sum for the payment of said judgment. The board filed an answer setting forth the agreed statement of facts shown in the above-reported case, and among other things setting forth that the fund upon which the town's claim was predicated was a special fund for the working of public roads, and had been wholly expended for road purposes by warrants issued by the predecessors in office of the present board, and that all taxes collected for the years 1907 and 1908 were expended in payment of said warrants for road purposes. It further answered that they were advised that they had no power to issue or levy a special tax and that therefore mandamus could not legally issue to control the discretion of the board.

Issue was joined on the affirmative matters set up in the answer and it was agreed that the defendants were members of the board of supervisors and that the town had presented a certified copy of the judgment to the board of supervisors and requested payment or the levy of a special tax, and that before the filing of the petition for mandamus the board of supervisors had rejected the application. It was further agreed that there was no order subsequent to January, 1906, until January 1909, that the board had ever adopted. Chapter 123, Code 1906, or section 4496 thereof. The court below dismissed the petition and refused to issue a mandamus, from which order there is an appeal here.

The questions presented for discussion are: Has the county power to pay the judgment out of the general county fund? If not, is it the duty of the board to issue a special tax to pay the same, and has it the power to do so? In other words, has the board of supervisors power to pay the claim where the board has spent for county purposes the road tax levy in 1907 and 1908 under section 4443, Code of 1906, Hemingway's Code, section 7123?

In our view of the case the money when collected by the sheriff should have been paid into the county treasury, either by placing it in a separate fund to the credit of the town of Crenshaw or by paying it into the county treasury without specifically setting it apart to a particular fund, and the municipality is in no wise responsible for the fact that the money was paid into the county road fund and expended by the county on the roads outside of the town of Crenshaw, which was working its own streets. It is different from the claim of a person arising under contract to do particular work for which there is a special fund set aside by law.

The general county fund is authorized by section 307, Code of 1906, section 3680, Hemingway's Code, conferring general jurisdiction on the board of supervisors

for numerous purposes, and among other things providing:

"They shall have power to levy such taxes as may be necessary to meet the demands of their respective counties, upon such persons and property as are subject to state taxes for the time being, not exceeding the limits that may be prescribed by law."

There is no allegation that there were no funds in this general fund; neither is there an allegation in the answer that the board had exhausted its power to levy taxes under the limitations prescribed by law.

Section 338, Code 1906, Hemingway's Code, section 3711, reads as follows: "The board of supervisors shall direct the appropriation of money that may come into the county treasury, but shall not appropriate the same to an object not authorized by law."

Section 311, Code of 1906, Hemingway's Code, section 3684, reads as follows: "A person having a just claim against any county shall first present the same to the board of supervisors thereof for allowance; and, if the board shall refuse to allow it, may appeal from the judgment of the board to the circuit court, or may bring suit against the county; and, in either case, if such person recover judgment, the board of supervisors shall allow the same, and a warrant shall be issued therefor."

It will be noted that this last section provides that if a claim is presented and disallowed by the board of supervisors either an appeal may be prosecuted to the circuit court or the claimant may bring suit against the county, "and in either case, if such person recover judgment, the board of supervisors shall allow the same, and a warrant shall be issued therefor."

Chapter 209, Laws of 1918, provides that every municipality and county which has outstanding warrants and other obligations and insufficient funds in the treasury to pay the same is hereby empowered and required

46—122 Miss.

to at once prepare to take up such warrants and other obligations from the proceeds of serial bonds which shall be issued for that purpose; and provides that such bonds shall be issued, whether it exceeds the limitation fixed by sections 331, 332, and 333, Code 1906. Hemingway's Code, sections 3704, 3705, and 3706, and that no election is required in) such cases, "provided that nothing in this section shall be contrued to require the payment of disputed debts or obligations." At the time this act was passed the obligation here involved was outstanding and is not paid.

It is held by this court in *Y. & M. V. Railroad* v. *Grenada County,* 115 Miss. 238, 76 So. 154, that the statute limiting the taxes which the board of supervisors may levy does not include taxes levied to raise revenue with which to discharge debts incurred under sections 331 and 334, Code 1906, Hemingway's Code, sections 3704 and 3707, for the levy of a special annual tax to be used exclusively to pay interest on bonds and providing a sinking fund and for the repayment of any loan warrants, and interest thereon which any county may execute to obtain money to defray county expenses. The court in the course of its opinion said:

"It is hardly possible that by the general language there used the legislature intended to withdraw from such boards the power to provide for the payment of debts which they had lawfully incurred."

It is insisted here, and was apparently the view of the court below, that the fund on which the county's claim was founded was a road fund, and because the board had spent the money in working the roads that no relief could be given and the general fund could not be resorted to. It seems to be contended that the bond of the supervisors must be resorted to. The agreement shows that the members of the board acting for the county appropriated that money belonging to the county. The money was used for the benefit of the county,

and the county is liable for the conversion to its own use of the money belonging to the town, and the judg-ment heretofore rendered settles the liability of the County.

Under the statutes above cited the board of super-visors had the power to pay the judgment from the general county fund, and if that was exhausted then it could issue bonds under chapter 209, Laws of 1918, and could levy a special tax to pay the same.

The judgment of the court below is reversed, and judgment will be rendered here for the appellant, di-recting the board to pay the judgment.

Reversed, and judgment here for appellant.

*Reversed.*